The opinion of the Court was delivered by
Cheves, J.
Choses in action, except to the value of the paper and wax, were not, at the common law, subjects of larceny. The Act of Assembly of 1736-7,[2] makes those mentioned therein, the subject of larceny, in the same manner as goods and chattels. Among those enumerated in that Act, are promissory notes; and it is contended by the Attorney-General, that the bank bills which were the subject of this larceny, are embraced by this denomination of choses in action.
The counsel for the defendant admit, that a bank bill may be a promissory note in some senses; but, that its proper name is a bank bill, and that as such, it is not included under the term promissory note.
It is said, that the Act of Assembly was passed at a time when we had no banks in this country, and that, therefore, it could not have intended to embrace their bills.
That the act was copied from 2 Geo. 2, c. 25, see. 3, as far as the provisions of that act were applicable to this State, at the time our act was passed, and that because inapplicable, bank bills, as well as many other denominations of choses in action, were omitted in *that act, *57 which renders it obvious, (it is argued,) that it was not the intention of the Legislature to embrace any of the specific denominations omitted.
That the Legislature have tacitly acknowledged this, by legislating on an analogous subject; viz., forgery.
That on the establishment of banks in the State, it was deemed necessary to pass an act to punish the forgery and counterfeiting of them, A. A. 1801,[1] (1 Brev. Dig. 369.)
That this is a criminal law, and is to be construed strictly.
It is true, that laws, defining crimes and inflicting punishments, are to be construed strictly. There are no crimes against the State, but those which are previously declared to be so, either by the statute or common law, and it must be manifest that the law prohibits the act. But it. is only necessary it should be manifest. There are some antiquated decisions on this subject, which are a violation of common sense, and which can afford no example for future cases.
. The question then is, whether it is clear and manifest, beyond a reason- ■ able doubt, that bank bills are included under the term promissory notes, and were intended by the Legislature to be so included. ’ I think they are included. They are writen in the form of a promissory note. They contain all the legal requisites of a promissory note, either at common law, or under the statute of 3 & 4 Ann.[2] That statute expressly recognizes promissory notes, signed by, (such is the language of the statute) or by authority of corporate bodies. If an action were to be brought against the bank issuing one of these bills, for the recovery of the amount of it, it would be declared upon as a promissory note. If it were not declared upon and considered as a promissory note in an action upon it, it would be necessary, perhaps, to prove the consideration which the bank received for it. It is, in every point of view, usual and necessary to consider it as a promissory note. A bank bill is, then, a promissory note, and of course, included within the term *promissory note in the Act of Assembly, unless, for some other reason, it be excluded. But although it be included, if it do not appear that the Legislature intended to include it, it will not be within the act. It is fair, however, and necessary, to take the just meaning of the terms used, as evidence of the intention of the Legislature; if there be no circumstance forbidding it. The circumstances which are supposed to forbid it, are, that bank bills could not have been in the contemplation of the Legislature, as there were none then in circulation and because bank bills were omitted in this act, although they were expressed in the statute from which the act was copied. But laws of this nature are not enacted for the circumstances of the particular day when they are ratified. They are a kind of perpetual beings, which receive a new and fresh origin every day. They embrace all cases and circumstances within their phraseology, at all times when they are unrepealed. If there are any exceptions to this rule, they must be shown.
In relation to the instrument, called a bank bill, there is no just discrimination between it in a civil and criminal point of view. As it is a promissory note under the statute 3 & 4 Ann, though we had no banks when that statute was adopted, so it ought to be under the Act of Assembly of 1736-7, making ehoses in action subjects of larceny. Nor is *58 the omission of the term bank bill, in the act, admitting it to have been copied (which is probable) from the statute 2 Geo. 2, c. 25, a reason why such a bill should not be included under the term promissory notes. The phraseology of that statute did not apply to the circumstances of this State, when the Act of Assembly was passed. To embrace the object of that statute, a precise enumeration was unfit, and therefore general terms were used, which would embrace all the particular denominations of dioses in action, mentioned in the statute. This course was suited to a State, whose habits, agricultural and commercial, were not yet formed, in order, by the generality of the terms, to *meet and embrace its varying habits. In this respect it pursued the precedent of the British statute, which, after expressing particulars, goes on to use general woz’ds, to embrace all other denominations, which were not expressed; and it is this part only, of the statute which we have copied, viz. : “ Or other bonds or warrants, bills or promissory notes, for the payment of any money, &c.” (Stat. 2 Geo. 2, c. '25, sec. 3.) .
If the last noticed argument of defendant’s counsel were to prevail, then the larceny of bills of exchange, under the Act of 1736-7, would not be punishable ; for they are expressly enumerated in the statute of 2 Geo. 2, c. 25, and are omitted in the Act of Assembly, unless included under the general words. The argument proves too much. So the argument drawn from the Acts of Assembly, relative to forgez-y, though ingenious, would lead us to such embarrassing consequences, that we would adopt it, if obliged, with fear and trembling. What would become of our laws, if they were to be virtually annulled in all cases where the Legislature have, in analogous instances, passed unnecessary laws ? The pruriency of legislation would leave us almost without law. In the Act of Assembly, to which this ai’gument refers, is unnecessarily enumerated the substance of all previous acts and statutes concerning the forgery of paper instruments. According, then, to fair rules of construction, instruments of the nature of bank bills, were in the legal contemplation of the Legislature, when the Act of Assembly of 1836 was enacted. But the question is not open. It has been decided by a full bench at Columbia, one Judge only (Mr. Justice Nott) doubting. The name of the ease I cannot ascertain. There is another point, under this first ground, viz., that the taking must be by robbery. But that is only part of the offence created by the Act. The words are, “steal or take by robbery.” Stealing is one offence, and robbery another. This indictment is for stealing. There can be no doubt on the point.
2. The presiding Judge has reported, that he did not charge the jury, that these woi'ds wez’e a binding *confession; but submitted the question to them, whether they were meant by the defendant, as a confession ; and this was very correct. But if the Judge, differing from the counsel for the defendant, considered the words as an acknowledgment on the part of the prisoner, it is contended, that, in collating the testimony, he ought to have suppressed his opinion on the matter. It is /the right, and often the duty of the presiding Judge, in the examination of questions of complicated facts, to give the aid of his discrimination, experience, and judgment, to the jury.[1] If he finally and distinctly sub *59 mits the question of fact to the jury, as a matter within their peculiar province, and on which they have a right to determine for themselves, there can be no cause for this Court to interfere. There may be extreme cases, which I hope will never exist, where a Judge, becoming insensible to the duties of his high station, may forget that impartiality which he is sworn to practice; a quality which graces, while it strengthens the authority of the bench. If, forgetting the duty of impartiality, a Judge become a partisan, this Court must interfere; but it must not be on every light occasion. In this case, the Court can see no impropriety in the remarks of the presiding Judge to the jury.
3. On this point, as. well as on all other points of fact in the ease, the Courtis, satisfied with the verdict of the jury. The circumstances are very strong, and so well connected, as to leave no doubt of the guilt of the defendant.
4. The general remarks which have been made on the second ground of the motion, will apply to this. It maybe added, that the alleged misstatement of the Court must have been harmless, as the facts relied upon by the counsel for the defendant exposed the error. But the presiding Judge reports, that there was no testimony before the Court, on the point; and that he did no more than say to the jury, the Attorney-General denies that he made any admission on the point.
5. The prosecutor was clearly admissible, notwithstanding *the conviction of the prisoner would entitle him to the restitution of his property. It is a general rule, that in criminal prosecutions, the injured party may be a witness. It is the constant practice in our Courts, on an indictment for larceny, to admit the owner of the goods to be a witness ; and it is no objection, that he will be entitled to the restitution of his property, on-the conviction of the offender. This is so well known, and has been so long the established and unquestioned practice, that we are necessarily surprised to see the objection now made. Phillips, 86, 87. Commonwealth v. Moulton, (9 Mass. Rep. 30.)
6. The last ground of the motion is, that the bills are not sufficiently described in the indictment. The indictment is in pursuance of the safest of all rules on this subject;[1] is in the words of the act, and there are superadded words calculated to complete all the objects of the law, in stating the offence.' The facts of the charge should be set forth, it is said, on the record, that the defendant may clearly understand- the charge he is called upon to answer, that the Court may know what judgment to pronounce upon conviction, and that posterity may know what law is to be derived from the record; (1 Cbitty’s Crim. Law, 231.) The indictment also is supported by the precedents and authorities in point; (3 Chitty, 967, 968.) On all the grounds, I am of opinion the motion ought to be refused.
Colcock and Johnson, JJ., concurred.

 3Stat. 470.

 5 Stat. 397.

 2 Stat. 544.

 2 McM. 428 ; 8 Rich. 140; 7 Rich. 471.

 3 McC. 533.